E-FILED
Wednesday, 27 August, 2014 04:22:07 PM
Clerk, U.S. District Court, ILCD

# *UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT*

*Everett McKinley Dirksen United States Courthouse*
*Room 2722 - 219 S. Dearborn Street*
*Chicago, Illinois 60604*

*Office of the Clerk*
*Phone: (312) 435-5850*
*www.ca7.uscourts.gov*

## *NOTICE OF ISSUANCE OF MANDATE*

*August 27, 2014*

*To:* *Kenneth A. Wells*
*UNITED STATES DISTRICT COURT*
*Central District of Illinois*
*Peoria , IL 61602-0000*

| | |
|---|---|
| *No.: 13-2764* | *UNITED STATES OF AMERICA,*<br>*Plaintiff - Appellee*<br><br>*v.*<br><br>*CHARLES W. POLLOCK, JR.,*<br>*Defendant - Appellant* |
| *Originating Case Information:* | |
| *District Court No: 1:11-cr-10082-JES-JAG-1*<br>*Central District of Illinois*<br>*District Judge James E. Shadid* | |

*Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.*

| | |
|---|---|
| *RECORD ON APPEAL STATUS:* | *Entire record returned consisting of* |
| | |
| *Exhibits:* | *2* |
| | |

*This notice sent to:*

*[] United States Marshal* *[x] United States Probation Officer*

*NOTE TO COUNSEL:*
*If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.*

*Please acknowledge receipt of these documents on the enclosed copy of this notice.*

\- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

*Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.*

*Date:* 8/27/2014

*Received by:* s/ J. Kelly

*form name: c7_Mandate(form ID: 135)*

CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2764

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHARLES W. POLLOCK, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court for the Central District of Illinois.
No. 1:11-cr-10082-JES-JAG-1 — **James E. Shadid**, *Chief Judge*.

ARGUED APRIL 8, 2014 — DECIDED JULY 1, 2014

Before POSNER and TINDER, *Circuit Judges*, and LAWRENCE, *District Judge*.*

LAWRENCE, *District Judge*. A jury found Charles Pollock, Jr. guilty of unlawful possession of a firearm, unlawful possession of ammunition, and attempted witness tampering, and Pollock was sentenced to 240 months in prison. Pollock

* Of the Southern District of Indiana, sitting by designation.

appeals his conviction and seeks a new trial; in the alternative, he challenges his sentence. We affirm.

## I. BACKGROUND

Pollock's troubles began in 2009 after a relationship with his then-girlfriend ended. Pollock was convicted of aggravated stalking after he violated an order of protection by following and threatening his ex-girlfriend. This felony conviction prohibited him from possessing any firearms and ammunition.

Thereafter, in April 2010, Pollock began a personal, yet tumultuous, fifteen-month relationship with Kim Bowyer.

In June 2011, Bowyer accompanied Pollock to his mother's home in Kewanee, Illinois to retrieve his guns. They left with several gun cases and shoeboxes and placed them in the trunk of Pollock's car.

By July 2011, Pollock and Bowyer's relationship had become abusive. On the evening of July 16, 2011, Pollock abducted Bowyer from her home and drove her to his house. She claimed that while there, he restrained, threatened, and raped her. After he finished, he discussed all of the evidence Bowyer had against him and suggested that they both commit suicide with a .45 caliber pistol he kept in his garage.

Bowyer reported this incident to the police,[1] and the police began investigating Pollock. On July 20, 2011, Pollock's friend Todd Clayes visited Pollock at his home. The two men drank numerous beers and smoked marijuana. At some

---

[1] Pollock was charged with battery, aggravated kidnapping, and aggravated sexual assault, among other charges. He was acquitted of all counts after a jury trial in an Illinois state court.

point during the evening, Pollock showed Clayes a semiautomatic pistol and then put it in the trunk of his car, which already contained boxes. The next day, law enforcement officers executed a search warrant and searched Pollock's home. They found two high-capacity rifle magazines and bullets in his dresser drawer. The police then arrested Pollock.

While in jail, Pollock phoned Clayes and told him to remove the "stereo" from his car. Knowing this meant Pollock wanted him to remove the guns that were located in his trunk, Clayes went to Pollock's home, destroyed the trunk lock with a hammer, and removed the guns. Clayes took them to Pollock's mother's home.

The police were monitoring Pollock's jail phone conversations and eventually questioned Clayes about the guns. Clayes admitted that he retrieved the guns and told the police he took them to Pollock's mother's home. He eventually turned over nine guns to the police.

Pollock was initially charged with unlawful possession of a firearm and unlawful possession of ammunition. However, a charge of attempted witness tampering was later added because in the months leading up to trial Pollock wrote Clayes a letter suggesting that he "disappear," "hide," or "leave [the] state" so he would not be available to testify at his trial.

The case proceeded to trial, and a jury found Pollock guilty of all three counts. At the sentencing hearing, the district court applied the cross-reference found in section 2K2.1 of the United States Sentencing Guidelines, finding that Pollock committed the firearm offense in connection with ag-

gravated sexual abuse. The district court agreed with the Government's argument that Pollock's threat of killing himself and Bowyer with the .45 caliber pistol after discussing all of the evidence Bowyer might use against him—essentially, threatening her so she would not report what happened to the police—was enough to meet the "in connection with" requirement of the provision. With a criminal history category of IV, using the base offense level for the aggravated sexual abuse, and applying several other enhancements, Pollock's advisory Guideline range was 360 to 480 months. The district court imposed a below-Guidelines sentence, sentencing Pollock to 120 months imprisonment on Counts One and Two, to run concurrently, and 120 months imprisonment on Count Three, to run consecutively, for a total sentence of 240 months.

## II. DISCUSSION

On appeal, Pollock challenges an instruction given to the jury, certain remarks made by the prosecutor, and his 240-month sentence. We address each challenge in turn.

### A. Jury Instruction

Pollock challenges the instruction the jury was given with regard to Count I, the felon in possession charge. The relevant instruction stated that the Government had to prove that "the defendant knowingly possessed a firearm[.]" Pollock argues that this instruction was given in error because it did not instruct the jury that it must unanimously agree that he possessed a *specific* firearm in order to convict him under 18 U.S.C. § 922(g).

As a preliminary matter, the Government argues that Pollock waived any "specific firearm" challenge because he

did not object to the instruction below. *See United States v. Pree*, 408 F.3d 855, 872 (7th Cir. 2005) ("'The right to object to jury instructions on appeal is waived if the record illustrates that the defendant approved of the instructions at issue.'") (quoting *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996)). Pollock did make some type of objection to the instruction at issue,[2] so his challenge is not waived. However, nowhere does the record reflect that Pollock objected to the instruction on the grounds that it lacked the "specific firearm" language. Because he did not challenge the instruction on the same grounds below, Pollock forfeited this challenge, and our review is for plain error only. *See United States v. DiSantis*, 565 F.3d 354, 362 (7th Cir. 2009) ("DiSantis's objection at trial focused on the lack of a causation requirement, while his objection on appeal focuses on the breadth of the definition of bodily injury. Since DiSantis's objections at trial and on appeal are substantively different, we will limit our review of the instruction for plain error.").

Turning now to the merits of Pollock's challenge, Pollock insists that possession of a specific firearm is an element of § 922(g), and thus a jury must unanimously agree as to the specific firearm he possessed. In support, Pollock directs us to *Richardson v. United States*, which held that a federal criminal jury must unanimously agree to all the elements of a crime in order to convict, but need not agree on the underlying brute facts that are merely the means used to satisfy an element. 526 U.S. 813, 817 (1999). In *Richardson*, the Supreme

---

[2] The objection appears to have been to instructing the jury *at all* on the firearms charge, as Pollock moved for a directed verdict on Count I. His motion was denied, and the district court gave the contested instruction over his objection. *See* Trial Tr. at 432-37.

Court was tasked with deciding if a jury in a continuing criminal enterprise case had to unanimously agree as to the specific violations that made up the continuing series. It examined the language and tradition of the pertinent statute in order to determine congressional intent and also examined the potential unfairness that would befall defendants if the predicate offenses were not deemed to be elements. Ultimately, the Supreme Court held that each predicate violation was an element of the offense, and therefore needed unanimous jury agreement. *Id.* at 820. Relying on *Richardson*, therefore, Pollock argues that possession of a specific firearm is an element of a felon in possession charge. We disagree.

The First Circuit examined this exact issue in *United States v. Verrecchia*, and concluded that possession of a specific firearm was not an element of the offense. 196 F.3d 294, 301 (1st Cir. 1999). We find its reasoning persuasive. First, it noted that "the plain language of the statute suggests that the element of the crime is simply the possession of 'any firearm.'" *Id.* at 299. This is true; § 922(g) provides, "it shall be unlawful for any person … who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year … to … possess in or affecting commerce, *any firearm* or ammunition[.]" (emphasis added). Further, in looking at other provisions of § 922(g), it is clear that "the emphasis … [is] on the categories of persons prohibited from possessing firearms rather than the type of firearm possessed." *United States v. DeJohn*, 368 F.3d 533, 541 (6th Cir. 2004). Similarly, as the First Circuit noted, the legislative history of § 922(g) "demonstrate[s] that Congress's emphasis was again 'on the person, not the firearm.'" *Id.* (quoting *Verrecchia*, 196 F.3d at 300). Thus, the language and history of the statute reflects the desire of Congress to keep *any* firearm

out of the hand of convicted felons, regardless of the gun type.

Turning to the other two *Richardson* factors, we concur with the First Circuit's conclusion that "we are not aware of [] any legal tradition that sheds light on the question before us." *Verrecchia*, 196 F.3d at 301. Pollock argues that prior to the enactment of § 922(g), Congress criminalized only specific weapons; however, as noted above, the legislative history of § 922(g) itself reflects a conscious decision made by Congress *not* to prohibit felons from possessing only certain firearms, but rather *any and all* firearms. Finally, we disagree with Pollock that there is "potential unfairness" in treating the firearm as a brute fact and not an element. As the First Circuit noted, "[e]ach possession of a firearm by a felon is of equal seriousness, a fact that mitigates the significance of potential juror disagreement about which firearms are possessed." *Id*. Unlike *Richardson*, "[j]uror disagreement about which gun was possessed would not mean that jurors believed the defendant to be guilty of different crimes of wildly varying seriousness." *DeJohn*, 368 F.3d at 541. If one juror believed the defendant possessed a rifle, but a different juror believed the defendant possessed a shotgun, both would still be in agreement that the defendant possessed "any firearm."

The statute clearly states that possession of *any* firearm by a convicted felon is prohibited. Accordingly, "the particular firearm possessed is not an element of the crime under section 922(g), but instead the means used to satisfy the element of 'any firearm.'" *Id*. at 542. We thus see no error, let alone plain error, in the instruction the district court gave to the jury.

**B. The Government's Improper Statements**

Next, Pollock claims he was denied a fair trial and sentencing hearing because the prosecutor mischaracterized certain pieces of evidence. Because Pollock did not object to these alleged mischaracterizations below, our review is for plain error only. *United States v. Phillips*, 745 F.3d 829, 834 (7th Cir. 2014).

When a defendant challenges certain statements made by a prosecutor, we engage in a two part inquiry: first, we determine if the statements were improper; and second, we determine if the statements deprived the defendant of a fair trial. *United States v. Wolfe*, 701 F.3d 1206, 1211 (7th Cir. 2012).

> We consider five factors to determine whether the remarks prejudiced the defendant: '(1) the nature and seriousness of the misconduct; (2) the extent to which the comments were invited by the defense; (3) the extent to which any prejudice was ameliorated by the court's instruction to the jury; (4) the defense's opportunity to counter any prejudice; and (5) the weight of the evidence supporting the conviction.'

*Id*. (quoting *United States v. Adams*, 628 F.3d 407, 418-19 (7th Cir. 2010)).

We begin with the mischaracterization that the Government concedes occurred six times during the trial. The prosecutor repeatedly stated that Clayes saw a *.45 caliber* semiautomatic pistol the night he was at Pollock's home. This was incorrect. Clayes' actual testimony was that he saw "a pistol, a semiautomatic pistol," but he did not mention the caliber

or any other identifying characteristic. Despite this error, the Government argues that the addition of the caliber was a minor detail and did not deprive Pollock of a fair trial. We agree.

Pollock does not dispute that Clayes' unequivocal testimony was that Pollock showed him "a pistol, a semiautomatic pistol." The ".45 caliber" was a minor detail that the prosecutor seemingly inadvertently added to this fact, and his addition of this detail was not "serious misconduct." Further, during his closing argument, Pollock's counsel pointed out to the jury that Clayes never said he saw a .45 caliber semiautomatic pistol, just that he saw a semiautomatic pistol. He therefore had at least some opportunity to correct the prosecutor's error. Finally, the weight of the evidence against Pollock cuts against his argument that the ".45 caliber" addition deprived him of a fair trial. As the Government notes, the fact that Pollock showed Clayes a semiautomatic pistol and then placed it in the trunk of his car, along with other boxes that eventually revealed more guns, may have led the jury to conclude that Pollock placed, and thus at one time possessed, all of the guns in the trunk of his car. Appellee's Br. at 43. But, the fact that the gun was specifically a *.45 caliber* pistol adds little to that inference. *Id*.

Of course, the prosecutor in this case should have been more prudent in ensuring he accurately summarized Clayes' testimony, but the misstatements certainly do not support Pollock's contention that he was denied a fair trial. Pollock has failed to establish that "the outcome of the proceedings would have been different" had the prosecutor correctly stated that Clayes testified that he only knew the gun Pollock showed him was a semiautomatic pistol. *United States v.*

*Bowman*, 353 F.3d 546, 550 (7th Cir. 2003) (quoting *United States v. Anderson*, 303 F.3d 847, 854 (7th Cir. 2002)).

With regard to the sentencing hearing, Pollock argues that the prosecutor mischaracterized Bowyer's testimony. Bowyer testified about the moments following her rape as follows:

> He [Pollock] says you've got one hell of an alimony [sic]. He says, you got DNA. I'm sure that they will fingerprint the truck. You got your daughter as a witness that he took me. He says, you got one alibi. He says, we might just end it now … He says that we should go out to the garage and he had a 45 hidden out in the garage somewhere and put our heads together and blast our brains out, one shot.

Sentencing Tr. at 34. At sentencing, the Government summarized this testimony as follows:

> He made the comment, well, you have my DNA; you could really get me in a lot of trouble. So he is trying to convince her not to go to the authorities. He is threatening her with the .35 [sic] and at that time the kidnapping is still a continuing offense.

*Id*. at 89-90.

Pollock first objects to the insertion of the word "my" before "DNA," arguing that the DNA Bowyer testified about referred to DNA evidence on the truck, not Pollock's semen. We disagree. DNA evidence is not the same as fingerprint evidence, and Pollock only referenced the truck with regard to his fingerprints. However, assuming Pollock thought fingerprints could leave DNA, Bowyer clearly testified that Pollock discussed the evidence she "had" against him before

suggesting they kill themselves. Whether this evidence she "had" against him came in the form of fingerprints or DNA from the rape is not dispositive.

Pollock also argues that Bowyer's testimony does not reflect that she felt Pollock was threatening her in order to prevent her from reporting the incident to the police. Thus, he argues that the prosecutor generally mischaracterized her testimony. We disagree. A logical inference to be drawn from Bowyer's testimony is that Pollock threatened her to prevent her from going to the authorities. Pollock may disagree with the inference the Government drew from her testimony, but this does not mean the prosecutor mischaracterized it.[3]

In short, the prosecutor did not mischaracterize Bowyer's testimony at the sentencing hearing, and his addition of such a minor detail—the fact that the pistol was a .45 caliber—during the trial did not deprive Pollock of a fair trial.

### C. Pollock's Sentence

Pollock's final contention on appeal is that his sentence should be vacated because it is procedurally and substantively flawed. Because Pollock challenges both his sentence's procedural soundness and substantive reasonableness, we employ two standards of review. "First, we conduct a *de novo* review for any procedural error. If we determine that the district court committed no procedural error, we review the

---

[3] In fact, Pollock did disagree with this inference at the sentencing hearing. He argued that "[t]here is no continuing abduction and there is no attempt to conceal anything … these are words spoken by somebody who is depressed as opposed to attempting to conceal any past crime." Sentencing Tr. at 90.

sentence for substantive reasonableness under an abuse-of-discretion standard." *United States v. Marin-Castano*, 688 F.3d 899, 902 (7th Cir. 2012) (internal citations omitted). We note that Pollock received a below-Guidelines sentence which "is presumed reasonable against a defendant's challenge that it is too high." *United States v. Poetz*, 582 F.3d 835, 837 (7th Cir. 2009).

First, Pollock argues that the district court did not adequately address the 18 U.S.C. § 3553(a) factors. With regard to these factors, the district court noted the following:

> Okay. The Court having considered the information before it. The Presentence Report is prepared by probation which includes sentencing guideline calculations, the defendant's commentary on sentencing factors, and the attachments, letters from individuals, the government's commentary, the arguments of counsel, the statement of Mr. Pollock, the factors as set forth in 3553, which include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense to promote respect for the law and provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with educational or vocational training, medical care or other correctional treatment in the most effective manner. I believe that after factoring all of these matters that this sentence is sufficient but not greater than necessary to comply with the purpose of the Act.
>
> …

> Now, as I said earlier, Mr. Pollock, you are—believe that you are being singled out for everything because of Kim Bowyer. The fact that you are being sentenced for the guns, the ammunition, and for the tampering with the witness has little to do with Kim Bowyer and everything to do with you.

Sentencing Tr. at 124-25; 128. The Court then referenced paragraph 63 of the Presentence Investigation Report, which concluded that Pollock suffered from narcissistic personality disorder and noted that he "sees his conflicts with other people as being created by them and therefore, he sees no need to change." The district court noted that these traits were "abundantly clear by spending any amount of time with you as we have." *Id*. at 129.

Pollock argues that "[t]he district court's cursory attention to the § 3553(a) factors provides this Court with no information as to why Pollock received a 20-year sentence and therefore hinders meaningful appellate review." Appellant Br. at 33. We disagree. A "district court is not required to recite and address each of the § 3553(a) sentencing factors, or all of a defendant's arguments for a lighter sentence." *United States v. Lyons*, 733 F.3d 777, 785 (7th Cir. 2013). "[T]he sentencing judge can discuss the application of the statutory factors to the defendant not in checklist fashion but instead in the form of an adequate statement of the judge's reasons, consistent with section 3553(a), for thinking the sentence that he has selected is indeed appropriate for the particular defendant." *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005). It is clear from reviewing the district court's statements—including those noted below—that it found the serious nature of Pollock's crimes to be a key factor. He pos-

sessed guns and ammunition, which he was prohibited from having, threatened Bowyer with one of those guns, and then attempted to prevent a key witness from testifying against him. The district court also factored in Pollock's own history and characteristics and the need to deter him from committing future crimes, especially in light of the finding that he takes no responsibility for his actions, but rather, blames others. Pollock's cursory argument on appeal regarding the § 3553(a) factors does not direct us to anything specific that the district court failed to consider or take into account, and, in all we are satisfied with the district court's reasoning.[4]

Next, Pollock argues that the district court committed several errors in imposing a consecutive ten-year sentence for attempted witness tampering. The district court said the following at sentencing:

> Now 5K2.9 sets forth the criminal purpose: committed the offense in order to facilitate or conceal the commission of another offense. I believe that's the case here. When the defendant was under federal indictment for Count III – was under federal indictment for Counts I and II when Count III was committed and the enhancement for the level for obstruction of justice, the two point enhancement, I don't think adequately accounts for the nature and circumstances of the offense, so therefore a consecutive sentence, I believe, is necessary as to Count III.

---

[4] While Pollock does not argue that the district court failed to consider his arguments in mitigation, we note that the district court heard and received evidence regarding Pollock's church attendance and Bible course completion.

Sentencing Tr. at 125-26. Pollock argues that the ten-year sentence is procedurally flawed because the district court did not adequately explain why such a sentence was necessary. He also argues that the sentence is substantively unreasonable because his "conduct was nothing more than garden-variety attempted witness tampering[.]" Appellant's Br. at 34. We disagree. While Pollock may believe the letters he sent to Clayes were mere "garden-variety" attempts to prevent him from testifying, clearly the district court did not agree, explaining that the mere two-level enhancement did not adequately account for the serious nature of Pollock's actions. Throughout his brief, Pollock himself notes that Clayes was the Government's "star witness," *id*. at 26, and "the only witness in this felon-in-possession prosecution who actually saw a firearm," *id*. at 31. This cuts against his attempt to classify his conduct as mere "garden-variety" witness tampering. The district court felt that a more severe punishment was warranted, and we are satisfied with both its justification and length.

Finally, Pollock argues that the district court erred procedurally in applying the cross reference found in U.S.S.G. § 2K2.1(c). This section allows a district court to cross reference to a higher base offense level—in this case, the base offense level for criminal sexual abuse found in § 2A3.1—if "the defendant used or possessed any firearm or ammunition in connection with the commission … of another offense[.] The Guidelines further define "in connection with" as follows: "if the firearm or ammunition facilitated or had the potential of facilitation, another felony offense or another offense respectively." § 2K2.1, cmt. 14(a). The district court stated the following at the sentencing hearing with regard to the application of the cross reference:

> On the first issue of cross-referencing, in the calculations of the guideline levels as pursuant to that, I'm going to find for the government and the probation's position as follows: I'm aware that the defendant was acquitted in state court. I'm also aware that this cross-referencing can be applied, whether or not a conviction was obtained. Now having said that, I am—I would say "cautious" in making some determination when there was a jury verdict on the issue, but I am specifically referencing or referring here to then the point in time where I believe—and I realize the standard is by preponderance of the evidence, whereas the jury verdict would have been beyond a reasonable doubt, and to establish a connection with the commission of or attempted commission of another offense. I'm focusing solely on the issue of the .45 caliber weapon. The mention of suicide and what, as my interpretation actually, based on Miss Bowyer's testimony, would be that it would be a murder suicide is what it would be because she wasn't agreeable to taking her own life. I'm not sure frankly, Mr. Pollock would have either, but there can be no question with the belief of Miss Bowyer at that time was that Mr. Pollock could and would do it; that he was capable of doing it. The restraint of her movement continued throughout this time and at the very least a reasonable inference could be that letting her know what he could do if she went to authorities. So I believe by a preponderance of the evidence on that issue, the government has prevailed.

Sentencing Tr. at 98-99.

Before we address the district court's use of the cross-reference, Pollock makes several preliminary challenges to its application. He argues

> the district court failed to: 1) make the threshold finding that the alleged sexual abuse occurred or explain how it could so find by a preponderance of the evidence; 2) state why it credited one of three inconsistent versions of the event that Bowyer gave in her testimony; and 3) state why it credited Bowyer over Pollock, given the many inconsistencies in her story and the lack of inconsistency in his.

Appellant's Br. at 37. We review these challenges to the factual findings made by the district court for clear error. *United States v. Mitchell*, 635 F.3d 990, 993 (7th Cir. 2011).

Pollock quibbles that the district court's findings were not explicit enough. However, we have held that even "in the fact of a paucity of explicit findings by the sentencing judge" implicit findings will suffice as long as there is "sufficient, objective evidence in the record" to support the findings. *United States v. Locke*, 643 F.3d 235, 244-45 (7th Cir. 2011); *see also United States v. Smith*, 218 F.3d 777, 783 (7th Cir. 2000) ("As we have said, these findings may be bare bones and perhaps more could have been done by the court to set forth its reasoning as clearly as possible, but the fact that more could have been said does not compel us to vacate Smith's sentence."). Further, all of the above arguments center on the district court's credibility determinations, which are entitled to "great deference." *Ray v. Clements*, 700 F.3d 993, 1021 (7th Cir. 2012).

Indeed, there was "sufficient, objective evidence in the record" that sexual abuse did occur. The district court acknowledged the fact that Pollock was acquitted of rape, among other charges, in state court—explaining that he was "cautious" in his determination. Nevertheless, the district court correctly noted that the standard for applying the cross reference was preponderance of the evidence rather than beyond a reasonable doubt. Bowyer unequivocally testified, in detail, about the events of July 16, 2011,[5] and the district court clearly credited her testimony. In this "he said, she said" scenario—Pollock denied ever raping Bowyer—it is unclear what more Pollock wanted the district court to say. Given Pollock's prior turbulent relationship and his tendency to blame others for his problems, we cannot say that the district court's credibility determination and sexual abuse finding were clearly erroneous. In short, the district court crediting Bowyer's version of events—that a sexual attack did occur—was not clearly erroneous.

Finally, we address the applicability of the cross reference. Pollock argues that the Government "did not demonstrate the required nexus between the firearm allegedly referenced by Pollock and the alleged sexual assault" because "the alleged sexual activity was over before any mention of a firearm." Appellant's Br. at 44. As noted above, the district

[5] Pollock also makes much about Bowyer's allegedly "internally inconsistent" statements. Appellant's Reply Br. at 13, n. 11. On July 17, 2011, Bowyer gave a statement to the police, stating that Pollock abducted, raped, and threatened her and told her that he wanted to kill himself. On July 18, 2011, Bowyer clarified that Pollock talked about both of them ending their lives with his .45 caliber gun. We do not find these statements to be inconsistent.

court applied the cross reference, finding that Pollock's mentioning of the .45 caliber pistol continued to restrain Bowyer's movement such that she could not report the incident to the police. While the relationship between the sexual abuse and the gun may seem attenuated to Pollock, we concur with the Government's view: rape is not just an act of sex, but rather is an act of violence used to demean, dominate, and intimidate the victim. Thus, after the sex act was over, Bowyer very much was still under the control of Pollock. We believe that suggesting—or threatening—to kill her after discussing all of the evidence she allegedly "had" against Pollock was sufficiently "in connection with" this act of violence. The district court did not err in applying the cross reference.

## III. CONCLUSION

Pollock's conviction and sentence are AFFIRMED in all respects.

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

## FINAL JUDGMENT

July 1, 2014

Before: RICHARD A. POSNER, Circuit Judge
JOHN DANIEL TINDER, Circuit Judge
WILLIAM T. LAWRENCE, District Court Judge*

| | |
|---|---|
| No.: 13-2764 | UNITED STATES OF AMERICA,<br>Plaintiff - Appellee<br><br>v.<br><br>CHARLES W. POLLOCK, JR.,<br>Defendant - Appellant |

| **Originating Case Information:** |
|---|
| District Court No: 1:11-cr-10082-JES-JAG-1<br>Central District of Illinois<br>District Judge James E. Shadid |

The judgment of the District Court is AFFIRMED in accordance with the decision of this court entered on this date.

---

*Of the Southern District of Indiana, sitting by designation.

form name: **c7_FinalJudgment**(form ID: **132**)

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

August 19, 2014

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

WILLIAM T. LAWRENCE, *District Judge**

No. 13-2764

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

*v.*

CHARLES W. POLLOCK, JR.,
*Defendant-Appellant*.

Appeal from the United States District Court for the Central District of Illinois.

No. 1:11-cr-10082-JES-JAG-1

**James E. Shadid**,
*Chief Judge*.

**O R D E R**

On consideration of the petition for rehearing and rehearing en banc, filed on August 7, 2014, no judge in active service has requested a vote on the petition for rehearing en banc† and all of the judges on the original panel have voted to DENY the petition for rehearing.

Accordingly, the petition for rehearing is **DENIED**.

---

* Of the Southern District of Indiana, sitting by designation.
† Judge Flaum did not participate in the consideration of this petition.